IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACKIE McDOWELL, et al.,

        Plaintiffs,

v.                                                    C.A. No. 97-2302

THE PHILADELPHIA HOUSING AUTHORITY, et al.,

        Defendants.

## DECLARATION OF DIANNE ROSENTHAL
## IN SUPPORT OF THE PHILADELPHIA HOUSING AUTHORITY'S
## MOTION TO STAY CONSENT DECREE

Dianne Rosenthal declares:

1.     I am the Assistant Executive Director of Administration for the Philadelphia Housing Authority ("PHA"). My current responsibilities include the management of the Finance, Budget and Information Systems Management ("ISM") Departments. I have held this position since July 2004.

2.     I have been employed by PHA for more than 30 years.

3.     This affidavit is based upon personal knowledge.

4.     PHA is a Commonwealth agency that provides safe and sanitary housing to low-income individuals and clears, replenishes and reconstructs housing in areas of urban blight.

5. Among other assistance, PHA provides a cash allowance, or a credit against rent, to scattered-site public housing residents who pay their own gas and electricity bills directly to their utility suppliers. This payment is known as a utility allowance. There are approximately 4,200 PHA resident households to which PHA provides a monthly natural gas utility allowance. For other PHA residents living in conventional housing, PHA pays the utilities directly.

6. In 1996 and 1997, natural gas rates were relatively stable and subject to only incremental increases that could be offset by increases in rental income. Indeed, when PHA negotiated and signed the Stipulation in 1997 that became part of the Consent Decree in this matter, these were the conditions in place and the conditions it expected to continue.

7. Since that time, however, the pace of energy cost increases has risen dramatically -- a radical change from the economic conditions that existed when the McDowell Consent Decree was negotiated and signed.

8. In the past year alone, PHA has been required to increase utility allowances twice.

9. The Philadelphia Gas Works ("PGW") recently announced another increase. Effective September 1, 2005, natural gas rates rose in Philadelphia by 14.18 percent to $1.58738 per hundred cubic feet ("ccf").[1] Without relief, PHA will be required to adjust for this increase.

10. In addition, since Hurricane Katrina hit on August 29, 2005, energy costs have dramatically risen. The Public Utilities Commission has approved an additional 19.4 percent

---

[1] Recently, there here have been two increases in natural gas rates on June 1 and September 1, 2005, of 8.39 and 5.79 percent, respectively. Together, these account for a 14.18 percent increase in natural gas rates.

hike in PGW rates effective October 7, 2005. PHA has every reason to believe that natural gas rates will continue to increase in the coming months.

11. Increased utility allowances significantly reduce PHA's revenues.

12. PHA receives an annual operating subsidy based on a formula. In the past three years, HUD has never funded 100 percent of PHA's formula-based operating subsidy. This year, for example, HUD is providing funds for only 88.8 percent of PHA's formula-based operating subsidy. HUD has not provided, and is not expected to provide, additional funding to offset increases in utility rates.

13. Even before the current utility rate increases are taken into account, this year PHA will spend an estimated $25 million or the equivalent of approximately 25 percent of its operating subsidy on tenant-paid utilities. Of that amount, natural gas costs are estimated to exceed $10 million, or 40 percent of the total utilities paid.

14. The only funds PHA receives for its scattered-site operations other than from HUD derives from rents collected from its residents.

15. Unlike a private landlord, when utility rates rise, PHA is unable to increase the rent residents pay because federal regulations limit the amount of rent housing authorities may charge residents to 30 percent of their adjusted income. Rent is defined to include utility allowances. Thus, as utility allowances increase, rental income to PHA declines.

16. The utility allowance increases PHA was required to implement for rate hikes effective June 2004 and December 2004 translate to lost revenue of more than $75,000 and

$92,000 per month respectively, or more than $900,000 and $1.1 million on an annualized basis respectively.

17. Raising gas utility allowances to adjust for the 14.18 percent rate increase would reduce PHA rental income approximately an additional $100,000 per month, or more than $1.2 million annually.

18. Raising gas utility allowances to adjust for the additional 19.4 percent rate increase that was just approved would decrease PHA rental income by approximately an additional $150,000 per month, or more than $1.8 million annually.

19. Taking into account the recently approved 19.4 percent rate increase, utility allowances will have risen 85 percent since April 2005.

20. In addition to depressing revenues, increases in utility rates raise PHA's expenses because of payments it makes directly for the utility costs of its residents who do not live in scattered-sites housing. While HUD is funding only 88.8 percent of PHA's formula-based operating subsidy, PHA must bear 100 percent of rapidly rising utility costs. This means that PHA must cut other costs more than 11.2 percent to make up for utility cost increases.

21. With decreased revenues as a result of increased utility allowances and increased expenses as a result of rising utility costs, PHA must scale back, or cancel programs that refurbish blighted housing in urban areas and assist the impoverished in their quest to become self-sufficient. Indeed, if PHA cannot obtain relief from spiraling energy costs, every aspect of PHA's work will be impaired as it will be required to make across-the-board cuts resulting in a

decrease in available housing stock. Without relief, PHA's waiting list will grow even longer because resources will have to be reallocated to scattered-site units which comprise only 35 percent of PHA's housing inventory.

22. At the same time, under the current system, utility allowances may be greater than the actual utility costs PGW charges residents. If the Consent Decree is not immediately stayed and ultimately lifted, PHA will be required to continually funds increases in utility rates without any restraints on the residents' consumption.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2005.

_____
Dianne Rosenthal

# CERTIFICATE OF SERVICE

I, Abbe F. Fletman, hereby certify that on the date noted below I caused a copy of the **Declaration of Dianne Rosenthal in Support of the Philadelphia Housing Authority's Motion to Stay Consent Decree** to be served via electronic filing and first-class mail upon the following:

> Paul A. Brooks, Esquire
> COMMUNITY LEGAL SERVICES
> 1424 Chestnut Street
> Philadelphia, PA 19102

*Abbe F. Fletman*
Abbe F. Fletman

Date: October 11, 2005