**United States District Court for the
Eastern District of Pennsylvania**

| | |
|---|---|
| **Jackie McDowell et al.** : | |
| Plaintiffs : | |
| vs. : | C.A. #97-2302 |
| **Philadelphia Housing Authority** et al. : | |
| Defendants : | |

**Plaintiffs' Memo of Law in Support of
Motion in Limine to Preclude "Expert" Testimony
Interpreting MTW Agreement (Washek Testimony)**

Defendant Philadelphia Housing Authority ("PHA") has moved for an order vacating the Consent Decree, and the Court has scheduled a hearing for January 30, 2006. PHA has indicated[1] that it may present an alleged expert, John F. Washek, who would testify to his interpretation of PHA's MTW Agreement with HUD, in particular the term "rents" as it is used in that Agreement. His interpretation apparently is based upon his personal reading of the MTW Agreement, and in part upon actions he says other housing authorities have taken with HUD approval pursuant to their own MTW agreements. This proposed "expert" testimony should be barred for two reasons, either one of which is sufficient in itself. First, the parol evidence rule prohibits extrinsic evidence of this sort about the meaning of the term "rent" in the MTW Agreement. Second, even if parol evidence about the proper interpretation of "rent" were permissible, the proffered testimony of Mr. Washek fails to meet the standard for "expert" testimony under Fed.R.Evid. 702, because there is no scientific, technical, or other specialized knowledge

---

[1] See PHA's Pre-Hearing memorandum, filed Nov. 23, 2005, p. 2; and PHA's "expert report" from John F. Washek, Edgemere Consulting Corp., appx A hereto.

which would assist the trier of fact to determine a fact in issue.[2]

**Statement of the Case:**

PHA contends that the Consent Decree should be vacated primarily because[3] it entered into the MTW Agreement with HUD. In particular, PHA contends that certain provisions in the MTW Agreement were intended by HUD to give PHA freedom to eliminate the obligation imposed by federal law and regulations (24 CFR §965.507) to adjust Tenants' gas utility allowances to reflect changes in PGW's gas rates. Challenged by the Tenants to identify a specific provision in the MTW Agreement that backs-up its argument, PHA relies almost entirely upon Article I, Section I, which provides:

> I. **The Agency [PHA] may adopt and implement any reasonable policies for setting rents for public housing, or rents or subsidy levels for tenant-based assistance**, notwithstanding the U.S. Housing Act of 1937, provided [PHA] submits the policy to HUD annually and upon any material change to the policy and provided that:
>     1. [PHA]'s board approves of the policy, and any material changes, and approved an analysis of the impact of the policy on current households . . .
>     2. [PHA] reevaluates its rent and subsidy level policies annually . . .
>     3. [PHA] adopts a policy for addressing hardship cases;
>     4. [PHA] provides a reasonable transition period for rent increases for existing tenants; and,
>     5. A public hearing is held regarding the policy . . . .

---

[2]Even if such scientific, technical or other specialized knowledge existed, PHA has not established that Mr. Washek qualifies as an expert in such knowledge.

[3]In subsequent filings, PHA has added additional arguments for vacating the decree, such as large increases in gas rates which occurred in 2005. Tenants do not address those newer PHA arguments because Mr. Washek's testimony is pertinent (if it is pertinent at all) only to PHA's original argument based upon the MTW Agreement.

> The rent policy, or any material changes to the rent policy, will be effective upon submission to HUD of a board resolution as provided above. . . . .

MTW Agreement, Article I, section I (p. 3) (emphases added).

PHA's proposes to have John F. Washek provide "expert" testimony about the meaning of the term "rents" in the MTW Agreement. Mr. Washek states in his expert report (appdx A hereto) that he bases his opinion about the meaning of "rents" upon the MTW Agreement itself, and upon "information published by HUD" about how other housing authorities elsewhere in the nation have modified their "rent" policies pursuant to their individual MTW agreements with HUD. See: Washek, pp. 2-3.

**First Argument: The Parol Evidence Rule Bars the Proffered Evidence**

Elementary law regarding the interpretation of contracts prohibits the introduction of parol, also called extrinsic, evidence when the terms of a written are unambiguous. As the Third Circuit has written:

> We determine a contract's meaning as a matter of law when its language is clear and unambiguous, but may use extrinsic evidence to clarify the meaning of an ambiguous contract. We have stated that '[t]o decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear . . . . [W]e consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.'

*Bethlehem Steel Corp. v. U.S.A.*, 270 F.3d 135, 139-140 (3d Cir. 2001) (internal citations omitted).

3

PHA has pointed to nothing in the text of the MTW Agreement which supports the contention, advanced by Mr. Washek, that the MTW Agreement's provision allowing PHA flexibility in "setting *rents* for public housing" (emphasis added) was intended by HUD to allow PHA to escape from the federal regulations which mandate revisions to Tenants' *utility allowances.*

The term "rent" (or "rents") in the context of public housing is a specialized one. "[HUD] has interpreted 'rent' to include the reasonable cost of utilities" as well as the amount each tenant pays to PHA for the use of the unit. *McDowell v. PHA*, 423 F.3d 233, 234-235 (3d Cir. 2005) (emphasis added).[4]  Because the MTW Agreement contains no definition of "rents", the term must be given the same meaning in interpreting that Agreement as it has under the U.S. Housing Act and federal regulations. But while "rents" is a specialized term, that does not make it an ambiguous one. In the absence of ambiguity, parol evidence cannot be considered when interpreting the MTW Agreement as to the meaning of "rents".

Parol evidence, therefore, should not be considered, because the MTW Agreement is not ambiguous about the meaning of the term "rents". The sort of parol evidence that PHA's Washek has to offer is especially inappropriate. "Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." *Bethlehem Steel Corp*. 270 F.3d

---

[4] See: Tenants' sur-reply memo, filed July 27, 2005, pp. 2-5; see also: Tenants answer memo, filed April 27, 2005, pp. 8-11, 14-19.

at 139-140.  Mr. Washek, in his expert report, offers none of this.  He has nothing to say about the negotiations between PHA and HUD which produced the MTW Agreement.  He offers no information about HUD's intent when it entered into the MTW Agreement with PHA.  He offers nothing about the conduct of HUD and PHA which might indicate their understanding of the MTW Agreement.  Rather, Mr. Washek cites three other housing authorities which, he says, each has modified public housing tenants' "rents" pursuant to their MTW agreements with HUD.  But Washek does not provide a copy of the MTW agreement between HUD and each of those other authorities, so the Court cannot even begin to determine whether those agreements are identical PHA's MTW Agreement.[5]

Extrinsic evidence should not be permitted about the meaning of the term "rents" in the MTW Agreement because that term is not ambiguous.  In addition, the sort of parol evidence Mr. Washek offers is particularly inadmissible.  Interpreting the MTW Agreement is the responsibility of the Court and the task would not be aided by his proposed testimony.[6]

---

[5] Even if one were to assume the other three authorities' MTW agreements with HUD were identical to PHA's, and that Washek's information about those authorities' actions is correct, those examples would not support PHA's position.  In two cases, according to Washek, the authority with HUD's approval established "flat rents";  flat rents, by definition, do not provide for any utility allowances.  24 CFR §960.253(b)(4).  The third authority, according to Washek, increased "income-based rent" to 35% of tenant income.  That is not a modification of utility allowances, it is a modification of "rent".

[6] The Tenants have argued in their earlier briefs (memo filed April 27, 2005, at pp. 8-11, 14-19; memo filed July 27, 2005, at pp. 2-5) that nothing in the MTW Agreement, nor in the U.S. Housing Act and the federal regulations, suggests that the authority granted to PHA in the MTW

**Second Argument: The proffered testimony of Mr. Washek does not qualify as expert testimony under Fed.R.Evic. 702.**

Fed.Rule of Evidence 702 provides, in part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (the testimony is based upon sufficient facts or data, . . . .

Nothing in Mr. Washek's report, and nothing that PHA has offered in support of having him testify, shows that he possesses any "scientific, technical, or other specialized knowledge [that would] assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."

Based on Mr. Washek's expert report, he would testify on three topics: (1) the "background on the MTW Demonstration Program", i.e. the legislation, its purpose, and the fact that PHA was selected as one of 30 demonstration authorities; (2) his personal interpretation of "federal housing policy" and of PHA's MTW Agreement; and (3) "national MTW activities related to rent policies". The first two of these topics are

---

Agreement to modify "rents" includes the authority to eviscerate "utility allowances". The opinion of the Third Circuit in this case reinforces the Tenants' argument. Rents are determined separately from utility allowances. "[A] public housing authority ordinarily may not require a tenant family to pay more than 30% of its monthly adjusted income as rent. Since [HUD] has interpreted 'rent' to include the reasonable cost of utilities, housing authorities must issue rebates to tenants who purchase service directly from a utility company. These rebates take the form of monthly [utility] allowances credited toward the tenant's rent." *McDowell*, 423 F.3d at 235-236 (internal citations omitted). It follows that the authority, given to PHA in the MTW Agreement, to modify "rents" does not necessarily include the authority to modify utility "allowances".

6

matters for legal interpretation, not expert factual testimony. The third proposed topic – the activities of other housing authorities pursuant to their MTW agreements – is not a "fact in issue" and so is not relevant here. What is at issue in this case is the interpretation of PHA's MTW Agreement with HUD, not the interpretation of other authorities' MTW agreements with HUD. In addition, neither PHA nor Mr Washek has shown that "national MTW activities related to rent policies" is a matter about which "scientific, technical or other specialized knowledge" exists.[7]

**Conclusion:**

Because the proffered testimony of John F. Washek would violate the parol evidence rule, and because PHA has not established his testimony would be admissible "expert" testimony under Rule 702, PHA should be precluded from presenting him as an expert witness. Tenants respectfully ask that the Court enter an order accordingly and grant such other and further relief as is just. A proposed order accompanies this motion.

Dated: Jan. _____, 2006

                                          Paul A. Brooks, Esq.
George Gould, Esq.
Michael Donahue, Esq.
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia., PA 19102
215-981-3700
Counsel for Plaintiffs

---

[7] Even if that were an area in which expertise exists, nothing in Mr. Washek's report indicates that he has such expertise. Merely reviewing HUD's website does not qualify one as an expert.