United States District Court for the
Eastern District of Pennsylvania

| | |
|---|---|
| **Jackie McDowell et al.** | : |
|     Plaintiffs | : |
|     vs. | : C.A. #97-2302 |
| **Philadelphia Housing Authority** et al. | : |
|     Defendants | : |

**Plaintiffs' Memorandum of Law in Support of
Second Post-Decree Motion for Award of Attorney's Fees, Expenses and Costs:
re Opposition to Defendants' Motion to Vacate the Consent Decree**

The plaintiff class ("Tenants"), by their attorneys, on Tenants' behalf and on behalf of Community Legal Services, Inc. ("CLS"), their attorneys' employer, respectfully ask that the Court grant an award of attorney's fees, expenses and costs from defendant The Philadelphia Housing Authority to CLS, for counsel's successful defense against defendant PHA's "motion to vacate consent decree" (docket #39) and related PHA motions.

In this motion ("Second Motion for Attorney's Fees"), Tenants and their counsel seek attorney's fees, expenses and costs for services distinct from those for which they already have sought fees in their (first) motion for interim[1] award of attorney's fees ("First Motion for Attorney's Fees"). (Docket #120.)[2] The First Motion for Attorney's

---

[1]Tenants' First Motion for Attorney's Fees was filed as a motion for an *interim* fee award because while the Tenants plainly prevailed on their first motion to enforce the Decree, the precise amount of the sanction to which each class member is entitled, and the mechanism for distributing the sanction, have not yet been determined. *See:* plaintiffs' motion to assess sanction, filed July 10, 2006. (Docket #127).

[2]Tenants' First Motion for Attorney's Fees, filed May 31, 2006, remains pending, by agreement of the parties.

Fees stemmed from Tenants' (first) motion[3] to enforce the Consent Decree, which was filed on Oct. 30, 2002. (Docket #14). Following a decision of the Third Circuit Court of Appeals in October 2005[4] that PHA had indeed violated the Decree, it became indisputable that Tenants are prevailing parties with respect to their (first) motion to enforce the Decree and that, accordingly, they are entitled to recover attorney's fees for that task.

The Tenants' Second Motion for Attorney's Fees stems from their successful defense of the Decree in the face of PHA's efforts, beginning March 9, 2005, to have the Decree vacated. (Docket #39.) By order entered Oct. 13, 2006, this Court denied PHA's motion to vacate the Decree. *See:* Exh. A hereto. (Docket #137.) The Decree therefore continues to require PHA to set gas utility allowances based upon the *actual* gas rate in effect at all times. Gas rates, PHA has admitted, have risen substantially in recent years, but PHA frequently has failed to raise allowances accordingly until Tenants have moved to enforce the Decree. The Court's decision to continue the Decree made Tenants the prevailing party with respect to PHA's motion to vacate the Decree. Therefore, an award of attorney's fees to Tenants and their counsel for preserving the Decree is warranted.

---

[3]On March 25, 2005, Tenants filed a "second motion to enforce the Consent Decree". (Docket #43.) That motion, and the Tenants' associated claim for attorney's fees, was settled. (Docket #53.)

[4]*McDowell v. PHA*, 423 F.3d 233 (3d Cir. 2005), rehearing denied; *cert. denied*, ___ U.S. ___, 126 S.Ct. 1910 (May 1, 2006).

**Facts and Procedural History:**

The Consent Decree was entered on January 12, 1998. On March 9, 2005[5], while Tenants' (first) motion to enforce the Decree remained on appeal, and just before Tenants filed their second motion to enforce the Decree[6], defendant PHA moved for an order to vacate the Decree, citing Fed.R.Civ.P. 60(b)(5) and (b)(6). (Docket #39.) PHA argued that a "significant change in the law" had occurred, within the meaning of *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) and progeny, and that the asserted change in the law justified vacating the Decree. ( *See:* PHA memo of law, docket #40.) Tenants vigorously opposed PHA's motion. (*See, inter alia*: docket #47 and #55.)

While PHA's motion to vacate the Decree was pending, and to reinforce that motion, on September 30, 2005 PHA filed an "emergency motion to stay enforcement of the Decree pending disposition of [its] motion to vacate" the Decree. (Docket #56.) PHA added the argument that significant changes in the *factual* circumstances had occurred, and that the asserted change(s) in factual circumstances (as well as the asserted change in the law) provided an additional, or an alternative basis to vacate the Decree. Tenants opposed PHA's stay motion (docket #58) and, on November 16, 2005, the Court denied

---

[5]Tenants recounted the key facts and procedural history of this case in the memo of law which accompanied their First Motion for Attorney's Fees, filed May 31, 2006. (Docket #120.) Rather than repeat all that here, Tenants incorporate their May 31, 2006 memo by reference, especially pp. 2-5. Only the events most pertinent to PHA's motion to vacate the Decree are recounted herein.

[6]The first motion to enforce, as noted above, was successful; the second motion to enforce was settled on terms which included an increase in the gas utility allowances.

PHA's stay motion. (Docket #66.)

In addition to PHA's emergency motion for a stay of enforcement of the Decree, PHA filed – and Tenants resisted – a number of motions in the weeks preceding the hearing which was held on PHA's motion to vacate the Decree. PHA's subsidiary motions were aimed at strengthening their motion to vacate the Decree. PHA's motions met with limited success:

--  PHA motion to preclude Tenants' expert, Roger Colton, from testifying at the hearing (docket #67); the Tenants filed an answer (docket #72), and the Court denied PHA's motion (docket #75);

--  PHA motion to allow an "expert" [sic], Steven Barnett, to survey class members (docket #74); the Court granted PHA's motion, over Tenants' resistance (*see*: docket #76 and #79);

--  PHA motion to quash a deposition subpoena that Tenants had issued for another of PHA's expert witnesses, Judith Mondre (docket #92); Tenants filed an answer (docket #93); Mondre filed her own motion to quash the subpoena as well (docket #95), which Tenants answered verbally at the hearing; and

--  PHA motion to preclude testimony by another of Tenants' expert witnesses, Leonard Cupingood (docket #110); Tenants responded verbally, and the Court denied PHA's motion.

In addition to opposing PHA's pre-hearing motions, Tenants filed a number of pre-

hearing motions of their own.[7] These motions were aimed at limiting evidence PHA could present at the hearing, obtaining more pre-hearing discovery, protecting attorney-client privilege, and focusing the hearing on the appropriate legal issues. Although Tenants' pre-hearing motions were not granted, they nonetheless prepared the groundwork for arguments in opposition to PHA's request that the Decree be vacated.

Beginning January 30, 2006, the Court conducted a hearing on PHA's motion to vacate the Decree. The hearing comprised all, or parts of, four days, finally ending (after an extended recess) on March 8, 2006. PHA presented six witnesses, four of them experts[8], from a variety of fields. PHA initially identified at least seventy possible exhibits, and ultimately 36 of those were admitted into evidence. PHA's exhibits were varied in scope, including *inter alia* "Moving to Work Agreements" between HUD and various housing authorities; HUD documents – including a 120-page analysis of the "Moving to Work Demonstration Project" nationwide; and engineering analyses generated by PHA's consultant Ms. Mondre.

---

[7] -- Motion to bar the Barnett survey of class members (docket #79);
-- Motion to preclude evidence of Tenants' gas consumption (docket #84);
-- Motion to preclude testimony from one of PHA's "expert" witnesses, John Washek (docket #89); and
-- Motion to overrule PHA's objections and compel production of documents (docket #91).

[8]The expert witnesses were: John Washek, who testified about HUD practices and the MTW programs of other housing authorities; Judith Mondre and Peter Burns, who testified about two types of gas-consumption analyses; and Steven Barnett, who testified about a survey he designed and conducted among class members. PHA administrator Diane Rosenthal testified as a lay witness, although she discussed PHA's financial situation in detail; and PHA manager Ronald Docimo testified about Ms. Floyd's unit.

Tenants presented testimony at the hearing from two experts: Mr. Colton, an economist/ energy expert; and Mr. Cupingood, a statistician. One lay witness, class member Elizabeth Floyd, also testified for the Tenants. Tenants ultimately introduced nine exhibits, culled from the scores of documents that PHA had provided during discovery and from many others upon which their expert Mr. Colton had relied.

In May 2006, at the Court's direction, Tenants filed a post-hearing memorandum of law and proposed findings of fact and conclusions of law. (Docket #116 and #117.) These covered the evidence and the legal issues in great detail.

By order entered October 13, 2006, the Court denied PHA's motion to vacate the Consent Decree. (Docket #137.) With that order, the Tenants became the "prevailing party", overcoming PHA's attack on the Decree.

**Standards for Award of Attorney's Fees, Expenses, and Costs:**

**Attorney's Fees, Expenses and Costs Should Be Awarded to Tenants under 42 U.S.C. §1988:**

Tenants are entitled to an award of attorney's fees, together with expenses and costs, for their successful protection of the Decree, based upon 42 U.S.C. §1988 which provides, in pertinent part:

42 U.S.C.A. § 1988:

(a) Applicability of statutory and common law

. . . . . . . . .

(b) Attorney's fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, **1983**, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction. [Emphasis added.]

(c) Expert fees

In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

The action which resulted in the Consent Decree was brought under 42 U.S.C. §1983. *McDowell*, 423 F.3d at 236-7. Therefore, 42 U.S.C. §1988 authorizes a fee award.

Based upon this Court's Oct. 13, 2006 order which denied PHA's motion to vacate the Decree[9], Tenants are the "prevailing party" with respect to their successful defense of

---

[9] This Court's order of Oct. 13, 2006, denying PHA's motion to vacate the Decree, satisfies the threshold criterion as established by *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Services,* 528 U.S. 598, 121 S.Ct. 1835 (2001); and *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S.Ct. 566, 573 (1992); *see also: Truesdell v. PHA*, 290

7

the Decree: Tenants have maintained the force of the Decree. As noted earlier, while PHA's motion to vacate the Decree was pending Tenants filed and later settled on favorable terms a Second Motion to Enforce the Decree. (Docket #43 and #53.) Had PHA succeeded in having the Decree vacated in March 2005, Tenants' Second Motion to Enforce the Decree could not have been settled on such favorable terms.

Presently pending before this Court is Tenants' Third Motion to Enforce the Decree, filed May 22, 2006 (docket #119), which challenges PHA's failure to raise the gas utility allowances to match gas-rate increases beginning in November 2005. [10] Had PHA succeeded in having the Decree vacated, Tenants' Third Motion to Enforce could have been undermined.[11] Therefore, Tenants should be awarded reasonable attorney's

---

F.3d 139 (3d Cir. 2002); *P.N. v. Clementon Board of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006).

[10] Also before this Court, of course, is Tenants' (first) Motion to Enforce the Decree, on remand from the Court of Appeals.

[11] Cases in which attorney's fee awards have been granted in post-judgment circumstances similar to those here include: *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558-562, 106 S.Ct. 3088, 3095-97 (1986) (attorney's fees properly awarded under Clean Air Act, under provision held to be analogous to 42 U.S.C. §1988, for plaintiffs' post-decree activities, even those not in a judicial forum, which were aimed at ensuring the defendant's compliance with the decree); *Walker v. U.S. Department of H.U.D. et alia*, 99 F.3d 761, 767-8 (5th Cir. 1996) ("Actions to prevent the modification of an earlier judgment are sufficiently similar for the same reasoning to apply; the plaintiffs have prevailed if they managed to keep the defendants from undoing their previous work by disturbing the earlier judgment" and therefore are entitled to fees under 42 U.S.C. §1988); *Duran v. Carruthers*, 885 F.2d 1492, 1496-98 (10th Cir. 1989) (plaintiffs properly awarded attorney's fees under 42 U.S.C. §1988 for resisting defendant's motion to vacate the decree, even though defendants ultimately withdrew the motion).

fees, expenses[12] and costs, for their efforts to protect the Decree.

Attorney's fees must be awarded for public-interest law organizations, like CLS, even though they do not charge clients any fees, just as fees would be awarded for ordinary fee-paying clients. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541 (1984); *Student Public Interest Research Gruop v. A. T. & T. Bell Labs*, 842 F.2d 1436, 1448 (3d Cir. 1988); *Interfaith Community Organization et al. v. Honeywell International Inc.*, 426 F.3d 694, 704 (3d Cir. 2005).

**Calculating the Attorney's Fee: The Lodestar**

A prevailing party's fee award in civil rights cases is calculated with reference to the so-called "lodestar": the number of hours of attorney time reasonably spent, multiplied by the appropriate hourly rate for counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983). *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3rd Cir. 2001). In a class action, the Court has an independent responsibility to review the reasonableness of attorney's fees claimed, to protect the class members' interests. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 819 (3d Cir. 1995); Fed.R.Civ.P. 23(h).

**CLS Hourly Rates Schedule:**

Hourly rates must be reasonable in light of the market for legal services in the locality, for attorneys of similar skill and experience. *Rode v. Dellarciprete*, 892 F.2d

---

[12]*See:* 42 U.S.C. §1988(c) as to expenses.

1177, 1183 (3d Cir. 1990); *Interfaith*, 426 F.3d at 704-705.

Tenants' counsel's employer, CLS, has established an Attorneys Fees Committee which establishes hourly rates for lawyers and support staff and coordinates the litigation and settlement of fees cases involving CLS. The governing body of CLS is its Board of Trustees, which is composed primarily of private attorneys appointed by the Chancellor of the Philadelphia Bar Association who are representative of a cross-section of the Philadelphia Bar. The CLS Board has adopted a comprehensive attorney fee schedule based upon a survey of hourly rates charged by private law firms and individual practitioners in Philadelphia. *See:* Declaration of Alan White, Esq., exh. B-1 hereto.

The CLS hourly rate schedule was most recently updated by the CLS Board of Trustees, effective April 1, 2006. A copy of this revised hourly rate schedule is attached as exhibit B-2. The bases for CLS's 2006 rate schedule is described by Alan White, Esq., in exhibit B hereto. The CLS hourly fee schedule is used by the CLS Attorney's Fee Committee in establishing hourly rates for CLS attorneys prior to filing fee motions in order to ensure that uniform criteria based upon prevailing market rates are applied to attorneys seeking court-awarded attorney's fees in CLS cases. The Committee also reviews court decisions as to hourly rates in the Philadelphia area for consistency with the current Rate Schedule.

The Third Circuit accepted the CLS hourly fee schedule as a "fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187, (3rd

Cir. 2001), *quoting*, *Rainey v. Philadelphia Housing Auth.*, 832 F.Supp. 127, 129 (E.D.Pa. 1993), *citing*, *Swaayze v. Philadelphia Housing Auth.,* No. 91-2982, 1992 WL 81598 at *2 (E.D.Pa. Apr. 16, 1992).

Reviewing the *previous* version of CLS's attorney's fee schedule, which was adopted Nov. 2003, Judge Schiller of the Eastern District of Pennsylvania specifically approved the hourly rates billed by CLS for the time of George Gould (then $400.00/hr.) and Michael Donahue (then $300.00/hr.) *Phillips v. PHA*, No. 00-4275 (slip op. at pp. 8-9). In the instant case, pursuant to the CLS fee schedule updated April 1, 2006[13], Mr. Gould's time is billed now at $410.00/hr. and Mr. Donahue's time at $330.00/hr. As is detailed in the attached exhibits D and E, respectively, both are highly experienced and well-qualified attorneys.

The majority of the compensation sought by CLS is for the time of Paul A. Brooks, whose declaration is attached as exhibit C. CLS bills for his time, under its revised schedule, at $290.00/hr. Mr. Brooks has twenty years of legal practice under his belt, including substantial experience in federal practice at the appellate level. The rate of $290.00 is in the middle of the range for attorneys with 16 - 20 years' experience, under CLS's current fee schedule.

CLS also seeks fees at $80.00/hr. for services by Ryan Murphy, a paralegal, who

---

[13]Hourly rates are judged by *current* market conditions and billing rates, rather than the market conditions and billing rates in effect when the services were performed. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). Therefore, CLS's April 2006 fee schedule is the appropriate reference point, rather than its Nov. 2003 schedule.

assisted Mr. Brooks and Mr. Gould primarily in preparing for the hearing on PHA's motion to vacate the Decree. Ms. Murphy's affidavit with time records is attached hereto as exhibit F.

**The Hours Spent by Counsel are Reasonable:**

When determining the hours billed for by counsel, should look for hours that are "excessive, redundant, or otherwise unnecessary". *Maldonado*, 256 F.3d at 184. Where the party pursued a legal claim based upon more than one legal theory, and prevailed on fewer than all such theories, the party is entitled to fees for *all* time reasonably spent on that claim, on the unsuccessful theory(ies) as well as the successful one. *Cf. Hensley*, 461 U.S. at 434-36, 103 S.Ct. at 1940-42 (1983). Only if the party failed to prevail on a claim which is distinct in all respects from the successful claim, may time be reduced on the basis that a claim was not successful. *Id.*

**Summary of Attorney's Fees Claimed:**

Tenants claim counsel fees as follows:

| | | | |
|---|---|---|---|
| Paul A. Brooks: | 337.6 hrs | @$290.00 / hr. = | $97,904.00 (see exh. C) |
| George D. Gould: | 118.6 hrs | @$410.00 / hr.= | $ 48,626.00 (see exh. D) |
| Michael Donahue: | 6.6 hrs | @$330.00 / hr.= | $ 2,178.00 (see exh. E) |
| Ryan Murphy: | 44.9 hrs | @$ 80.00 / hr.= | $ 3,592.00 (see exh. F) |
| Total of attorney fees: | | | **$152,300.00** |

Supporting affidavits and detailed time and task records are attached.

**Summary of Expenses:**

Tenants claim reimbursement for expenses as follows:

Fisher, Sheehan and Colton (Roger Colton):

    Invoice dated Jan. 13, 2006 (exh. G-1):

        14.5 hrs. @ $175.00 =     $2,537.00

    Invoice dated March 9, 2006 (exh. G-2):

        55.0 hrs. @ $175.00 =     $9,625.00

        Travel Expenses:         1,421.00

    Total for Fisher, Sheehan & Colton:     $ 13,583.00

LECG Inc. (Leonard Cupingood):

    Invoice dated March 28, 2006     $    495.00

        Exh. H-1: Services in Feb. 2006

    Invoice dated May 9, 2006     $ 5,652.00

        Exh. H-2: Services in March 2006

    Total for LECG Inc.:     $ 6,147.00

Diana Doman Transcribing (exh. I):     $    811.00

Total of expenses:     **$20,541.00**

**Expenses: Discussion:**

In connection with Tenants' defense against PHA's motion to vacate the Decree,

as verified by Mr. Brooks (exh. C), CLS reasonably incurred liability to a Boston MA energy and economic consulting firm, Fisher, Sheehan and Colton ("Colton"), for the services of Roger Colton, in the total amount of $13,583.00. Mr. Colton provided expert consulting services, and traveled to and attended the hearing on PHA's motion to vacate on Jan. 30 and Jan. 31, 2006, testifying on the latter day. Copies of Colton's two invoices, dated Jan. 13, 2006 and March 9, 2006, are attached as exhibits G-1 and G-2.

Toward the same end, as verified by Mr. Brooks (exh. C), CLS reasonably incurred liability to a firm LECG Inc. for the services of Leonard Cupingood, a statistician, who attended and testified at the hearing on March 8, 2006, in the total amount of $6,147.00. Associates and assistants to Mr. Cupingood also provided services. Copies of LECG's invoices, dated March 28 and May 9, 2006 are attached as exhibits H-1 and H-2.

Tenants purchased the transcript of the oral argument held by this Court in January through March 2006, at the cost of $811.00. Copies of the invoices for the transcript are attached as exh. I.

The Third Circuit charged PHA with the record costs (of briefing and appendixes) in the appeal. A copy of the Tenants' bill of costs is attached as exh. J. Rather than assess the costs itself, the Third Circuit left that to the District Court. The various rates, of course, are determined by court rules.

**Procedure for Determining Attorney's Fee Motion in Class Actions:**

Under Fed.R.Civ.P. 23(h)(1), notice of any motion by class counsel for attorney's fees must be "directed to class members in a reasonable manner", in addition to being served upon the other parties. Tenants are the "prevailing party" with respect to this matter, so this Court can and should declare as much at this time, without need for notice to the class members. However, the actual fee award cannot be determined until after notice is given to the class members and any objections from them are considered. At the appropriate time, as determined by the Court, Tenants will submit a proposed notice to be furnished to class members. The Court may (but is not required to) hold a hearing on the fee motion as well. *Id. See also:* Fed.R.Civ.P. 54(d)(2). Pursuant to Fed.R.Civ.P. 23(h)(3), the Court must issue findings of fact and conclusions of law. At the appropriate time, as determined by the Court, Tenants will submit proposed findings of fact and conclusions of law.

**Conclusion:**

For the reasons described above, the Tenants respectfully ask that this Honorable Court, after due notice is given to the class members, enter an order (A) declaring that Tenants are a prevailing party with respect to their defense against PHA's motion to vacate the Decree and therefore are entitled to a fee award; and (B) specifying the amount of attorney's fees (plus expenses and costs) awarded, in connection with this matter. Tenants claim attorney's fees from defendant PHA, to be paid to Tenants' counsel's employer, CLS, in the amount of $152,300.00; plus expenses of $20,541.00. The grand total of fees, expenses and costs claimed herein is $172,841.00. Tenants reserve the right

to seek an additional amount for any time spent and expenses incurred after this motion is

filed. Tenants also request that the Court grant such other and further relief as is just.

Dated: Dec. 12, 2006

             <u>  PAB                            </u>
             Paul A. Brooks, Esq.
             George D. Gould, Esq.
             Michael Donahue, Esq.
             Community Legal Services, Inc.
             1424 Chestnut Street, 5th Fl.
             Philadelphia PA 19102
             215-981-3700
             Counsel for Plaintiffs

McDowell J MEMO re 2d M for Intm for Atty Fees re Vacate M FINAL 12 12 2006