IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKIE McDOWELL, et al.,<br>       Plaintiffs,<br>v.<br>THE PHILADELPHIA HOUSING<br>AUTHORITY, et al.,<br>       Defendants. | CIVIL ACTION<br><br>NO. 97-2302 |

## DEFENDANT'S RENEWED MOTION TO VACATE THE CONSENT DECREE BASED ON ADOPTION OF MTW PLAN

Defendant Philadelphia Housing Authority ("PHA") respectfully renews it motion to vacate the consent decree based on the adoption by PHA of the Moving to Work ("MTW") Plan and for the reasons set forth in its March 9, 2005 motion to vacate and at greater length in the accompanying memorandum.

Respectfully submitted,

  /s/ mbc0686
Alan C. Kessler (I.D. No. 22230)
Brian P. Flaherty (I.D. No. 28235)
Charlotte E. Thomas (I.D. No. 42483)
Stephanie L. Kosta (I.D. No. 89656)
Michael B. Cavadel (I.D. No. 201659)

Attorneys for defendant,
Philadelphia Housing Authority

Of counsel:
WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103-2097
(215) 977-2000

Dated: April 30, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKIE McDOWELL, et al.,<br>                      Plaintiffs,<br>v.<br>THE PHILADELPHIA HOUSING AUTHORITY, et al.,<br>                      Defendants. | CIVIL ACTION<br><br>NO. 97-2302 |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION TO VACATE CONSENT DECREE BASED ON ADOPTION OF MTW PLAN

Defendant Philadelphia Housing Authority ("PHA") respectfully submits the following memorandum in support of its renewed motion to vacate the consent decree based on the adoption of a Moving to Work ("MTW") Plan.

### PRELIMINARY STATEMENT

Consent decrees involving governmental agencies are not intended to last in perpetuity. Nor are consent decrees intended to make federal courts the enforcement arm for governmental instrumentalities already extensively overseen by state and federal administrative agencies. In particular, courts have the duty to re-examine consent decrees that bind governmental and quasi-governmental entities to ensure that -- as time passes and legislation changes -- the consent decree remains in the public interest.

In March, 2005, PHA moved to vacate the 1998 Consent Decree based upon becoming an MTW agency in 2001-02. In October, 2006, this court denied that motion without

prejudice, and expressed its willingness to reconsider the motion at such time as -- and retroactive to the date that -- PHA adopted an MTW Plan.

In March, 2007, PHA's Board of Commissioners adopted a plan that contains an express initiative pertaining to the utility allowances under the MTW Agreement and the MTW Act. The Agreement and Plan relieve PHA from compliance with the utility allowance regulations in the interests of new and cost-effective methods of governance. As such, the regulations that formed the premise for the McDowell Complaint and which the Consent Decree purports to enforce are no longer applicable to PHA. The Consent Decree -- which embraces a traditional regulation-based model of administering public housing -- is at direct odds with the letter and spirit of the MTW Act and the specific initiative for utility allowances contained in the MTW Plan. Together, the MTW Agreement and the MTW Plan present changed circumstances sufficient to vacate the Consent Decree.

Moreover, continuing the Consent Decree will have severe economic repercussions for PHA and also the public interest. PHA receives an operating subsidy from the United States Department of Housing and Urban Development ("HUD") and HUD has announced that the subsidy for PHA will be 76.4% of need. If the Consent Decree is not vacated, PHA will be required to divert its limited funds from other areas -- such as security and maintenance -- in favor of a subgroup of tenants who have already been overpaid based upon a faulty, inflated consumption rate.

As set forth below and as set forth in the March, 2005 motion to vacate, vacatur is appropriate and called for under the circumstances.

## STATEMENT OF FACTS

### The Parties

Plaintiffs are a class of tenants residing at certain times in the scattered-site housing of defendant PHA. PHA is a public housing authority which provides subsidized housing to low income residents in Philadelphia.

### The 1997 Complaint

On April 9, 1997, plaintiff Jackie McDowell filed a class action complaint, alleging that PHA had not complied with HUD regulations governing adjustments to utility allowances for public housing residents. More specifically, the complaint alleged through lead plaintiff Jackie McDowell that PHA, *inter alia*, failed to adjust gas utility allowances as required by 24 C.F.R. § 965.507 and as a percentage of shelter costs as required by 42 U.S.C. § 1437a, and failed to conduct an annual review of its gas utility allowances. Complaint ¶¶ 1, 4, 32-34, 36, 42.

### The Consent Decree

The parties settled the litigation without an admission of liability by stipulation, in which PHA essentially agreed to comply with the then applicable regulations. On January 12, 1998, this Court entered the Consent Decree that incorporated the terms of the McDowell Stipulation. *See* Exhibit A; *see also McDowell v. PHA*, 423 F.3d 233, 239 (3d Cir. 2005), *cert. denied*, 126 S. Ct. 1910 (2006) (noting that the Consent Decree "tracks" the HUD regulations).

### PHA's Motion to Vacate the Consent Decree

On March 9, 2005, PHA filed a motion to vacate the Consent Decree. PHA advocated that the Consent Decree should be vacated because PHA had become an MTW Agency, and that it was no longer bound by the utility allowance regulations that formed the legal premise

for the McDowell Complaint. PHA asserted that its status as an MTW Agency thereby constituted a "significant change," justifying an order vacating the Consent Decree. *See* PACER No. 39.

### The Court's Stated Views About the Consent Decree

At the time of the March, 2005 motion to vacate, while PHA had entered into an MTW Agreement, *see* Exhibit B, PHA had not yet adopted an MTW Plan that addressed utility allowances. PHA believes that the status of the MTW Plan was a factor in this court's denial without prejudice of the March, 2005 motion to vacate. In colloquy with counsel, the court stated as follows:

> I don't mind saying that, even without having read your briefs, my current feeling is pretty much in line with what I suggested . . . at the outset of this hearing, that I can't see anything which would preclude PHA from formulating a plan and getting it approved under the Moving-to-Work program. And it seems rather obvious to me that . . . if that plan is finally approved and it differs from the consent decree, that it's . . . the new plan that . . . should take over and I see no reason why the consent decree could not be vacated effective at such time as a new plan is finally approved.

Transcript of Hearing volume VI, March 8, 2006, 118:24-119:9 ("Tr. v., VI").

### The October 12, 2006 Order Denying the Motion to Vacate the Consent Decree

On October 12, 2006, this court entered an order which *inter alia* denied without prejudice PHA's March, 2005 motion to vacate the Consent Decree. The order expressly acknowledged PHA's "right to make further application(s) to this court for modification of the Consent Decree to effectuate changes in procedure permitted or required by the MTW Agreement . . . ." *See* PACER No. 137.

**The MTW Plan**

Following the October 12, 2006 order, PHA approved an MTW Plan, which was adopted on March 6, 2007 by the PHA Board of Commissioners. *See* Exhibits C and D. Under the MTW Agreement, no further action on the part of HUD is required to implement the MTW Plan. *See* Exhibit B, MTW Agreement Art. I, ¶ I.

**The Change in Circumstances Justifying Vacating the Consent Decree**

Congress enacted the MTW Act to allow selected public housing authorities to adopt flexible governance models with waivers from aspects of the existing regulatory structure. The MTW Act recognizes that other models of administration may *inter alia* "reduce cost and achieve greater cost effectiveness in Federal expenditures." 42 U.S.C. § 1437f notes. The MTW Agreement supersedes certain "provisions of the United States Housing Act of 1937 . . . and HUD requirements to the extent necessary . . ." in the interest of heightened efficiency. *See* MTW Agreement, Exhibit B, at 2. By becoming an MTW Agency and adopting an MTW Plan, the utility allowance regulations upon which the McDowell Complaint is based, and which obligations the Consent Order memorializes, are no longer applicable to PHA. PHA's MTW Plan contains an initiative for utility allowances that cannot co-exist with the terms of the Consent Order.

An additional changed circumstance is the Customer Responsibility Program ("CRP"), offered by the local gas provider, which started after the Consent Decree was entered. For eligible low income participants in this program, monthly gas bills are fixed as a percentage of income provided they make timely payments. A substantial number of PHA scattered site residents included in the plaintiff class are also enrolled in this program. For these enrolled

residents, who receive both utility allowances and gas bills as a fixed percentage of income, rising gas rates and rising utility allowances amount to a financial windfall. The Consent Decree requires the allowances to be increased based upon rising gas rates, while the gas costs of the CRP program participants are fixed. The parties never intended the Consent Decree to operate in this manner. It should be noted that PHA is considering future changes to the MTW Plan based upon the CRP Program.

## ARGUMENT

### I.

### LEGAL STANDARD

A district court "is not doomed to some Sisyphean fate, bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest." *In re Pearson*, 990 F.2d 653, 658 (1st Cir. 1993). Review of the continued propriety of a consent decree is particularly appropriate where -- as in this case -- the consent decree calls for judicial supervision of a government or quasi-government run facility. *See id.* (noting that in such instances, "a court's decrees implicate the citizenry's interests as well as those of the parties and bear directly on the salubrious operation of public institutions"); *see also Frew v. Hawkins*, 540 U.S. 431, 441 (2004); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 380-81, 392; (1992). The Supreme Court has instructed district courts to "exercise flexibility" in the review of such institutional consent decrees. *Rufo*, 502 U.S. at 303.

The right to seek modification of a consent decree, and the power of a district court to modify and vacate a consent decree is governed by Fed. R. Civ. P. 60(b). *Rufo*, 502 U.S. at 378-

83; *Evans v. City of Chicago*, 10 F.3d 474, 476 (7th Cir. 1993), *cert. denied*, 511 U.S. 1082 (1994). The requirements of Rule 60(b) are satisfied and modification of a consent decree should be granted, including, where appropriate, vacating the decree in its entirety, where it is shown that there has been a significant change in either the law or the facts on which the consent decree was predicated. *Rufo*, 502 U.S. at 383-90; *Brown v. Philadelphia Housing Authority*, 350 F.3d 338, 348 n.6 (3d Cir. 2003); *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 184 (3d Cir. 1999); *Gilmore v. Housing Authority of Baltimore City*, 170 F.3d 428, 430 (4th Cir. 1999); *King v. Greenblatt*, 52 F.3d 1, 4 (1st Cir.), *cert. denied*, 516 U.S. 863 (1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995).

"A party seeking modification of a consent decree may meet its initial burden by showing . . . a significant change either in factual conditions or in law . . . ." *Rufo*, 502 U.S. at 384. On a motion to modify or vacate a consent decree, the court must make two determinations: (1) whether there has been a significant change in the law or factual circumstances; and (2) if so, whether the proposed modification of the decree is "suitably tailored to the changed circumstance." *Id.* at 383.

Since PHA has now adopted the MTW Plan, PHA renews its motion to vacate based upon changed circumstances. This court should vacate the Consent Decree.

## II.

### VACATUR OF THE CONSENT DECREE IS PROPER DUE TO THE ADOPTION OF THE MTW PLAN

In March, 2005, PHA moved to vacate the Consent Order entered in 1998 in this litigation because its status as an MTW Agency amounted to changed circumstances affecting PHA's obligations under the Consent Decree. This court indicated its willingness to consider

PHA's status as an MTW Agency as a changed circumstance. However, PHA believes that this court concluded that PHA's status as an MTW Agency alone was insufficient as a basis to vacate the Consent Decree in the absence of the adoption by PHA of an MTW Plan.

In an exchange with counsel at the hearing, the following was stated:

> I don't mind saying that, even without having read your briefs, my current feeling is pretty much in line with what I suggested . . . at the outset of this hearing, that I can't see anything which would preclude PHA from formulating a plan and getting it approved under the Moving-to-Work program. And it seems rather obvious to me that . . . if that plan is finally approved and it differs from the consent decree, that it's . . . the new plan that . . . should take over and I see no reason why the consent decree could not be vacated effective at such time as a new plan is finally approved.

Tr. v. VI, 118:24-119:9.

On March 6, 2007, PHA adopted an MTW Plan, and accordingly vacatur of the Consent Decree is appropriate. The adoption of the MTW Plan brings full circle PHA's status as an MTW Agency as "changed circumstances" justifying vacatur of the Consent Decree.

### III.

### THE ADOPTION OF THE MTW PLAN -- TOGETHER WITH THE MTW AGREEMENT -- AMOUNTS TO CHANGED CIRCUMSTANCES.

A consent decree should be modified or vacated where there are significant changes in fact or law that affect the consent decree. Modification is warranted due to changed factual circumstances where the changes affect the movant's obligations under the consent decree making compliance substantially more onerous, the consent decree becomes unworkable due to unanticipated obstacles, or enforcement without modification would harm the public interest. *Rufo*, 502 U.S. at 384.

Similarly, modification of a consent decree is appropriate based upon a change in law if the obligations set forth in the consent order are no longer required under federal law, and may be warranted if applicable law "has changed to make legal what the decree was designed to prevent." *Rufo*, 502 U.S. at 388. A party seeking to vacate a consent decree need not show an actual conflict between the provisions of the consent decree and the subsequently enacted law. "A 'significant change' with no attendant conflict" is sufficient. *Brown v. PHA*, 350 F.3d 338, 348 n.6 (3d Cir. 2003) *citing Rufo*, 502 U.S. at 378; *Building and Construction Trades Council v. NLRB*, 64 F.3d 880 (3d Cir. 1995).

Following the October 12, 2006 order denying PHA's motion to vacate without prejudice, PHA's Board of Commissioners approved the MTW Plan attached to this motion. *See* Exhibit C. Accordingly, the changed circumstance in this instance is the adoption of the MTW Plan that contains an initiative relating to utility allowances that is at odds with PHA's obligations under the Consent Decree.

### A. The MTW Agreement and Adopted MTW Plan are Significant Changes that are at Odds With PHA's Obligations under the Consent Decree.

The Consent Decree in this case was designed to enforce retroactively and prospectively the then applicable utility allowance regulations set forth at 24 C.F.R. § 965.501, *et seq.*, and the allowances as a percentage of shelter costs as set forth in 42 U.S.C. § 1437(a). *See* Complaint ¶¶ 1-2, 13-14. Accordingly, the Consent Decree called for, as did the then applicable federal housing regulations, an adjustment to the gas rate utility allowance should gas rates increase by ten percent or more, *compare* Consent Order ¶ 8 *with* 24 C.F.R. § 965.507(b), and an annual review of the basis for the establishment of utility allowances. *Compare* Consent Decree ¶ 6-7 *with* 24 C.F.R. § 965.507(a).

Several years after entry of the Consent Decree by this court, PHA became an MTW Agency. Congress understood that strict adherence to the maze of federal housing regulations can frustrate efficiency in the administration of public housing. As a consequence, Congress enacted the MTW Act, which authorized experimentation in the design of cost-effective models of governance for public housing authorities together with waivers from some regulation to better suit the needs of housing residents and constituents. *See* 42 U.S.C. § 3535 (setting forth requirements for waiver). Once a housing authority has been selected by HUD as an MTW agency, it enters into an MTW Agreement, and then adopts a plan that describes its MTW program. *See* 42 U.S.C. § 1437f notes, (b).

On April 1, 2001, HUD accepted PHA into the MTW program, and in 2002 PHA and HUD entered into the MTW Agreement. *See* Exhibit B. That Agreement supersedes certain provisions of the United States Housing Act of 1937, and certain regulations promulgated thereunder, including the regulatory structure that forms the premise for the Consent Decree:

> Except as expressly provided in this Agreement, this Agreement <u>supersedes</u> the terms and conditions of the ACCs [annual contribution contracts between housing authorities and HUD][1] and the provisions of the United States Housing Act of 1937 (the "1937 Act") and HUD requirements to the extent necessary for the Agency to implement its MTW demonstration, as approved by HUD in this Agreement.

MTW Agreement, *id.* Art. I, ¶A (emphasis added).

---

[1] Annual Contribution Contracts ("ACCs") set forth the terms and conditions under which a housing authority participates in the public housing and/or Section 8 certificate and voucher programs administered by HUD. *See* MTW Agreement, Preamble. In fact, the McDowell Complaint contains causes of action predicated on breach of the ACC. *See* McDowell Complaint ¶¶ 48-51. ACCs are superseded by the MTW Agreement. MTW Ag., Art. I, ¶ A.

Although PHA had entered into the MTW Agreement at the time of the March, 2005 motion to vacate, it had not yet adopted an MTW Plan. As of March 6, 2007, however, the PHA Board of Commissioners adopted the MTW Plan with an initiative addressing utility allowances. This amounts to a change in circumstance sufficient to justify vacatur of the Consent Decree.

PHA's status as an MTW Agency with an adopted MTW Plan is legally incompatible with PHA's obligations under the Consent Decree. The Consent Decree obligates PHA to comply with utility allowance and allowances as a percentage of shelter costs regulations. By contrast, the purpose of the MTW Act and PHA's status as an MTW agency is to relax these same restrictions to allow PHA to employ creative and even experimental models of governance. Put simply, these two models cannot co-exist.

By way of specific example, the Consent Decree applies to "all Philadelphia Housing Authority . . . tenants for whom PHA pays or should have paid gas utility allowances since September 1, 1996." Consent Decree ¶ 2. Under the MTW Plan, PHA will phase out payments of utility allowances to households with incomes at or above 80% of the area median income. *See* Exhibit C at B-38.[2] Therefore, households with such incomes which are entitled to allowances under the Consent Decree will not receive any utility allowances under the newly adopted MTW Plan.

Under the Consent Decree, increases and/or decreases in gas utility allowances are directly linked to fluctuations in utility rates. Under the MTW Plan, should HUD decrease PHA's operating subsidy, utility allowances would be reduced based upon the decreased

---

[2]   PHA is considering further changes to the Plan based on the CRP program.

operating subsidy. *See* Exhibit C at B-38. At present, HUD has announced a prorated reduction to 76.4% of PHA's operating subsidy. *See id.* at 5. Under the MTW Plan, this will result in a 24.6% reduction in utility allowances. *See id.* at B-38. Therefore, unless HUD changes its mind and elects to increase the operating subsidy, utility allowances for 2007 will be reduced by 24.6% in 2007. The Consent Decree does not however permit such reductions. Since the Consent Decree does not permit such reductions, it is in conflict with the MTW Plan, and the Consent Decree should be vacated.

Moreover, after the Consent Decree was entered, Philadelphia Gas Works established CRP, which provides for discounted and budgeted gas bills to eligible low income customers, including the tenants of scattered site housing that are part of the plaintiff class. The program provides for a reduced payment of 8, 9, or 10% of gross monthly income, with a $3 co-pay toward arrearages. There is no limit on participation for eligible customers. PHA recently learned that thousands of PHA tenants are currently participating in CRP. This means that for residents participating in the CRP program and subject to the Consent Decree, their actual utility bills are fixed as a percentage of monthly income, without regard to fluctuations in the gas rates. Rising gas rates are a boon to these residents, as this causes utility allowances to rise, while their actual energy costs are fixed. For these residents, the Consent Decree does not advance the purpose of utility allowances and has outlived its usefulness. While PHA is currently considering future changes to the MTW Plan based on the CRP Program, the participation of some of the plaintiff class in the CRP program is an additional changed circumstances justifying vacatur.

### B. The Consent Decree has Become Unworkable due to Unanticipated Obstacles.

In addition, the Consent Decree has become unworkable due to PHA's desperate financial condition and the refusal by HUD in 2005 and 2006 to provide supplemental funds to cover increases in utility rates. At the time the Consent Decree was entered, the parties did not anticipate the extent to which the subsidy would be reduced almost ten years later. In early 2007, HUD announced that it was reducing the operating subsidy of all housing authorities and that of PHA to 76.4% of need. This occurred after PHA was forced to layoff 22% of its workforce and at a time of generally increasing utility rates. *See* MTW Plan at 5; *see also* PACER No. 158.

The parties did not anticipate the degree to which utility rates increased after the Consent Decree was entered. No one anticipated that the operating subsidy to PHA would be reduced to such a significant extent, and that PHA's requests for supplemental subsidies would be denied. In addition, no one anticipated the extent to which PHA's residents would participate in the CRP program. No one believed -- at the time the Consent Order was entered -- that rising gas costs would actually provide a financial windfall to residents enrolled in this program because the residents' utility expenses were fixed as a percentage of income. No one believed that PHA would simply be increasing the income of its residents while PHA's own operating subsidy was being reduced and PHA plunged deeper into budgetary woes.

The Consent Order is accordingly unworkable because it obligates PHA to pay a windfall to the tenants of scattered site housing enrolled in the CRP program, to the detriment of the remainder of PHA tenants who reside in other types of public housing, at the same time that PHA must sacrifice essential services such as security and maintenance to all of its tenants.

### C. Vacatur of the Consent Decree is in the Public Interest.

The Court in *Rufo* explained that changes in consent decrees are warranted where enforcement of the decree without modification "would be detrimental to the public interest." 502 U.S. at 384. *Rufo* emphasized the need for flexibility in responding to changed conditions, particularly in institutional reform litigation, because such consent decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions." 502 U.S. at 381. Financial constraints created by consent decrees are "a legitimate concern of government defendants in institutional reform litigation and therefore are appropriately considered" on a motion to vacate a consent decree. 502 U.S. at 392-93.

PHA has argued at length the financial constraints it is facing in numerous previous filings. *See* PACER Nos. 126, 133, 147, 148, 150. It also has presented evidence that the subgroup of tenants in scattered site housing have been overpaid under the McDowell Consent Decree. *See, e.g.*, PACER No. 133. The participation of some of the plaintiffs in the CRP program is further evidence that some plaintiffs not only have been overpaid, they are receiving a windfall. Against the backdrop of that windfall, PHA's budgetary shortfalls that resulted in the January, 2007 large personnel layoffs, together with the HUD operating subsidy reduction, the discriminatory windfall that the plaintiff class receives under the Consent Decree is not in the public interest. *See* PACER No. 150. Indeed, to the extent legislation memorializes the public interest, the MTW Act and MTW Plan establish that creative models of public housing administration outweigh the continuation of the Consent Decree in the public interest.

## III.

## VACATUR IS SUITABLY TAILORED TO THE CHANGE IN THE MTW AGREEMENT AND PHA'S MTW PLAN.

In addition, the proposed modification to the Consent Decree -- vacatur -- is "suitably tailored to the changed circumstance," as set forth in Point II, *supra*. As explained in *Gilmore v. Housing Authority of Baltimore*, 170 F.3d 428, 430 (4th Cir. 1999), where the statutory requirement that the consent decree is originally entered to protect no longer exists, the consent decree is no longer necessary, and vacatur is the appropriate remedy.

Just as in *Gilmore*, in this case, the regulatory structure that originally served as the basis for the Consent Decree no longer applies to PHA. Since the regulations in question no longer apply, the Consent Decree that purports to enforce those regulations is no longer necessary and vacatur is properly ordered.

## CONCLUSION

For the above-stated reasons, PHA respectfully requests that this court vacate the Consent Decree based upon the adoption of the MTW Plan.

Respectfully submitted,

/s/ mbc0686
Alan C. Kessler (I.D. No. 22230)
Brian P. Flaherty (I.D. No. 28235)
Charlotte E. Thomas (I.D. No. 42483)
Stephanie L. Kosta (I.D. No. 89656)
Michael B. Cavadel (I.D. No. 201659)
Attorneys for defendant,
Philadelphia Housing Authority

Of counsel:

WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA   19103-2097
(215) 977-2000

Dated:  April 30, 2007

## CERTIFICATE OF SERVICE

Michael B. Cavadel hereby certifies that on April 30, 2007 a copy of the foregoing was filed electronically and is available for viewing and downloading from the ECF system. I further certify that a true and correct copy of the foregoing was served via first class mail on counsel for all parties identified below:

>Paul A. Books, Esquire
>COMMUNITY LEGAL SERVICES, INC.
>1424 Chestnut Street
>Philadelphia, PA  19102-2505

>/s/ mbc0686
>Michael B. Cavadel

Date:  April 30, 2007

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Consent Decree |
| Exhibit B | MTW Agreement |
| Exhibit C | MTW Plan |
| Exhibit D | Resolution Adopting MTW Plan |